. VILLANTI, Chief Judge.
T.B. (the Father) appeals a final judgment for protection against sexual violence, arguing reversible error was committed in three instances: (1) a video of the victim, A.B., was erroneously received and relied on by th¿ trial court,. (2) the ensuing injunction was thus not supported by competent, substantial evidence as the video was the sole evidence against him, and (3) his due process rights were violated when the trial court prohibited him from viewing the video. Finding merit in each of these arguments, we reverse.
The Father and R.B. (the Mother) are the' divorced parents of A.B., a fourteen-year-old girl. Ten days after A.B.’s return to the Mother’s house following a holiday time-share visit with the Father and paternal grandmother, A.B. got in trouble be *547 cause she was late walking home with a boy. The Mother searched A.B.’s backpack and found A.B.’s cell phone, which she had been told by A.B. was left at the grandmother’s home. Upon searching the phone, the Mother discovered a text message from a boy containing a video link with instructions to delete after viewing. Upon clicking the link, the Mother viewed an explicit video of A.B. kissing and groping an unnamed boy, taken by another boy urging them on. As a result, the Mother consulted the Father, who chastised A.B. over the phone. Both parents then agreed that severe sanctions would be imposed, primarily consisting of chores, taking A.B.’s phone away, and home schooling. The latter was a sanction the Father had traditionally opposed when punishments were meted out for past disciplinary problems. A.B. was kept home from school the next day, and the next evening she informed the Mother of certain lewd acts allegedly committed by the Father in her presence. The Mother reported the allegations to the child abuse hotline and immediately lifted the home schooling sanction. The Mother did not confront the Father with these allegations, but after consulting the school resource officer, she sought and obtained an ex parte injunction against him under section 784.046, Florida Statutes (2013).
In preparation for the return hearing, the Father filed a motion to take A.B.’s deposition. The Mother objected and moved to take the testimony of A.B. in camera, alleging, inter alia,
[A.B.] has matured to the point where she has become- more aware of [the Father’s] actions and attitudes[;] .,. is old enough to express well-reasoned opinions and to have them considered by the courtQ] ... and [t]he court should take the testimony of [A.B.] in camera so as not to subject her to the scrutiny and disapproval of either parent, should she - Say something unfavorable or unflatter-. ing, and to ensure that she will be able to express herself-freely.
The trial court granted this latter motion ex parte, but; irather than ordering A.B.’s testimony be conducted in camera at the hearing as requested, the trial court ordered A.B; - to appear at the Children’s Advocacy Center for “a forensic interview”at which “[njeithér parent, no attorney for the parties, nor any other party related to this matter shall-' participate or be present,” with the interview to “be conducted pursuant to the Children’s Advocacy Center standard operating procedures.” Finally, the video was ordered to be delivered directly to the court’s chambers and then sealed in the court file, “unless good cause is shown and further order of the Court rules otherwise.” The interview was conducted as ordered and the video delivered to the trial judge,' who viewed the video: in camera before the return hearing began.
At the beginning of the hearing, the trial court announced that it had viewed the fifty-six minute recorded interview. The Mother testified to the facts as A.B. had relayed them to her and confirmed the factual description leading up to the home schooling punishment, and that, in the past, “A.B. has lied to her to obtain things she desired and to avoid punishment.” More importantly, the Mother also testified that she had no personal knowledge of A.B.’s allegations nor any physical or corroborating evidence. At the conclusion of the Mother’s testimony, the trial court denied the Father’s motion for directed verdict, finding that A.B.’s video testimony was sufficient proof to support the injunction. The trial court thereafter denied the Father’s request to be informed of the video’s contents and also stated “[A.B.] has testified to more than the situation .that was brought up here today.... So based *548 on what I have viewed and heard, I’m going to deny the Motion to Dismiss.”
The Father, his mother, sister, and girlfriend all testified thereafter regarding the events of the weekend during which A.B. claimed the abuse occurred — each testifying to the lack of any impropriety by the Father and to the virtual impossibility of abuse having occurred- due to him sleeping on a different floor and the grandmother’s bedroom having its door always open and being across the hall from A.B.’s room. Nevertheless, as was its prerogative, the trial court rejected this testimony because the parties “could not testify as to the child’s whereabouts every single time she was in the home ... so there is .no inconsistency.” The Father also testified that he has not been arrested or interviewed by police in connection with any of A,B.’s allegations.. Following this testimony, the Father again moved to dismiss, arguing that, in the absence of corroborative evidence under section 90.803(23), Florida Statutes (2013), the trial court was not permitted to consider A.B.’s video testimony, and as a result, the court lacked competent, substantial evidence to support granting a final injunction. The Father further argued that the court’s consideration of the video was in direct violation of his constitutional rights.
After a brief recess, the court denied the motion and placed its reasoning on the record. In that reasoning, the trial court explained for the first time that section 92.55, Florida Statutes (2013), allowed it “on [its] own motion” to order video testimony of a victim under the age of sixteen. And further, “based on my observations of — -and also at the prior hearing ... the child was present. She didn’t speak in court, but she ... was dressed appropriately and acted appropriately for a courtroom setting.” The trial court also noted that the interviewer in the video “did qualify her to indicate whether or not she knew the difference between a truth and a lie, and she indicated she did.” The trial court further opined that the video was necessary because such a recitation would be “too stressful on any child.” The trial court recited extensive case law it had reviewed which'it believed supported its rulings.
In. this appeal, legal issues are involved, and hence the standard of review is de novo. Acevedo v. Williams, 985 So.2d 669, 670 (Fla. 1st DCA 2008). The burden is on the party seeking a domestic violence injunction to provide competent, substantial evidence in support thereof. Goudy v. Duquette, 112 So.3d 716, 717 (Fla. 2d DCA 2013). Absent such evidence, a trial court must dismiss the petition. See id. at 718. In making its ruling to grant the petition, the trial court explicitly relied on two cases: Monteiro v. Monteiro, 55 So.3d 686 (Fla. 3d DCA 2011) (finding that the trial court could conduct an in-camera interview of the alleged child victims without the parties and their attorneys being present, with the right to due process being satisfied by the presence of a court reporter at the interview), and Berthiaume v. B.S. ex rel. A.K., 85 So.3d 1117 (Fla. 1st DCA 2012) (holding that a sworn petition, filed by a parent, is a presumptively sufficient basis for the grant of an injunction against a nonparent). However, the trial court’s reliance on these cases was misguided, and we are forced to reverse on three bases.[1]
First, the trial court erroneously received and relied on the videotaped interview of A.B. in granting the injunction. *549 We recognize that pursuant to sections 92.53 and 92.55, the trial court was permitted to order on its own motion the video testimony of A.B. However, under the facts of this .case, we do not consider A.B.’s out-of-court statements as being the functional .equivalent of her testimony.. Section 92.53(3) expressly conditions the trial court’s power to order testimony by videotaped interview on either the trial judge or an appointed “special master” presiding over the interview. Unlike the trial court in Monteiro, the trial court below did not conduct its own interview in the presence of a court reporter and instead ordered A.B. to report to the Children’s Advocacy Center for a forensic interview. During the final hearing on the injunction, the trial court provided an explanation as to why it ordered the interview to be conducted at the advocacy center:
I’ll note for the record and for you— all’s benefit I do that because these-r-the individuals there are trained in doing these child forensic interviews. It’s also my belief they are well-aware of situations that occur in families and when divorces take place, and it can happen that children manifest stories; it can happen that children are influenced to make up stories, and they know how things work. They know that these types of things can happen. So I find that they are well-trained and well-experienced in the work that they do, so -that is why I have them conduct essentially the in camera interview, as opposed- to doing it solely myself, and then I review it.
However, justifying after the fact the appointment of an unnamed person at an advocacy center is clearly insufficient to transform the interviewer into the neutral “special master” contemplated by the statute. Without the court conducting the interview itself or properly appointing a special master, A.B.’s videotaped interview could not qualify as admissible videotaped testimony under section 92.53. ■
Because the videotaped, interview did not constitute testimony, it could only be admissible under the “statement of child victim” exception to the hearsay rule. See § 90.803(23). Under this exception, the court may receive and rely on a child victim’s hearsay statements only when the statement is reliable and “[t]he child either: (a) [tjestifies; or (b) [i]s unavailable as a witness, provided that there is other corroborative evidence of the abuse or offense.” § 90.803(23)(a)(2). Here, A.B. did not testify, so her statements could be received by the court only if she was unavailable and there was corroborative evidence of the allegations. But while A.B. might arguably have been unavailable due to the “substantial likelihood of severe emotional or mental harm” that would arise 'from ' having her testify, § 90.803(23)(a)(2)(b), there was no corroborative evidence to satisfy the second requirement.' At the time the court heard the first motion for judgment of acquittal, the only evidence before' the court other than the -videotaped interview was the "testimony of the Mother, comprised' entirely of'-hearsay statements from A.B. that likewise would have required corroboration to be admissible. Because there was no corroborative evidence of the alleged abuse, the dictates of section 90.803(23) were not satisfied, and the trial court therefore erred as a matter of law in-admitting the video hearsay evidence. ,-
Second, even if the video had been properly received and relied on by the court, we would still be required to reverse the grant.of injunction because the trial court’s order was not supported by competent, substantial evidence as required by the relevant statute. While the trial court relied on the. Berthiaume case for the *550 proposition that an injunction may be granted based on allegations made in a sworn petition alone, that case is expressly predicated on the respondent being a non-parent. Here, because the Mother was a parent seeking a protective injunction, on behalf of A.B. against the Father, a special statutory standard applies:
With respect to a minor child who is living at home, the parent or legal guardian seeking the protective injunction on behalf of the minor child must: (1) Have been an eyewitness to, or have direct physical evidence or affidavits from eyewitnesses of, the specific facts and circumstances that form the basis upon which relief is sought, if the party against whom the protective injunction is sought is also a parent, stepparent, or legal guardian of the. minor child.
§ 784.046(4)(a). However, the trial court in this case granted the injunction solely on the basis of A.B.’s hearsay statements, made to both the Mother and the forensic interviewer. Because the Mother was not a witness to the alleged acts and failed to introduce physical evidence or affidavits from eyewitnesses to the alleged acts, she failed to meet the requirements of section 784.046(4)(a)(l) for the grant of an injunction against the Father. Accordingly, the trial court erred by granting the injunction on this basis.
Third, by refusing the Father the opportunity to view the videotape, the trial court deprived him of his right to due process. As a preliminary matter, the trial court’s reliance on Monteiro to argue that the Father received due process is misplaced because, unlike the proceeding in Monteiro, here there was no actual testimony from the alleged victim and the trial court granted the injunction based solely on hearsay evidencé. As such, and contrary to the ruling in Monteiro, simply including a copy of the videotaped interview with the record on review was insufficient to provide the Father with due process. See State v. Townsend, 635 So.2d 949, 957 (Fla.1994) (“Essentially, the other corroborating evidence requirement assures that a defendant will not be convicted solely on the basis of the hearsay testimony. This acts as a safeguard to protect the interests of the accused, which traditionally has been one of the basic underlying reasons for not allowing hearsay testimony in criminal trials.”). Instead, at the very least the right to procedural due process required that the Father receive “fair notice of the charges' and allegations” made against him. Blaylock v. Zeller, 932 So.2d 479, 480-81 (Fla. 5th DCA 2006). And further, as the trial court stated, A.B. testified during the videotaped interview “to more than the situation that was brought up [at the hearing].” If the trial court had allowed the Father to attend an interview with A.B. properly conducted by a judge or special master, as it was statutorily obligated to do, see § 92.53(4), the Father’s due process right to fair notice would have been protected. By depriving the Father of the opportunity to view the videotaped interview, even after the fact, the trial court denied him fair notice and the opportunity to fairly respond to A.B.’s allegations.
In this situation, due process also required “ ‘an opportunity to prove or disprove the allegations made in the complaint. All witnesses should be sworn, each party should be permitted to call witnesses with relevant information, and cross-examination should be 'permitted’” Tejeda-Soto v. Raimondi, 968 So.2d 635, 636-37 (Fla. 2d DCA 2007) (emphasis added) (quoting Ohrn v. Wright, 963 So.2d 298, 298 (Fla. 5th DCA 2007)). Moreover, this prerequisite is echoed by section 784.046(6)(c), which “requires a ‘full hearing,’ ” including cross-examination, “before *551 entry of a permanent injunction.” McNulty ex rel. G.M. v. Douglas ex rel K.D., 111 So.3d 231, 232-33 (Fla. 2d DCA 2013). And while we also recognize the inherent authority of a trial court to protect a minor’s rights, even in derogation to an accused’s rights of cross-examination, see Townsend, 635 So.2d at -956, the trial court’s authority to do so is premised on its making certain findings which here the trial court failed to make,
The only way the trial court could have forb'áde cross-examination and still satisfied the right to due process would have been if it had first determined that A.B. was unavailable as a'witness and that the out-of-court statements made by A.B. were “trustworthy and reliable by examining the ‘time, content, and circumstances’ of the statement^.” Id. at 956-57. Generally, -if a hearsay-statement is not reliable and from a trustworthy source, then the evidence is inadmissible. Id. at 957. In evaluating the reliability, of the statement, “the court may consider the mental and physical age and maturity of the child, the nature and .duration of the abuse, or offense, the relationship of .the child to the offender, the reliability of the assertion, the reliability of the child victim, and any other factor deemed appropriate.” § 90.803(23)(a)(1). The trial court must strictly adhere to the guidelines set by section 90.803(23)(a)(l), and failure to do so constitutes a basis for reversal. See Townsend, 635 So.2d at 958; see also Hopkins v. State, 632 So.2d 1372, 1377 (Fla. 1994) (“Absent the specific findings of reliability mandated by the statute, a reviewing court cannot determine whether the statements were in fact reliable. Failure to make specific findings not only ignores the clear directive of the statute, but also implicates the defendant’s constitutional right to confrontation.”.). Simply noting that A.B. answered “yes” to the interview-ér’s question on knowing the difference between the truth arid a lie is insufficient to support a finding of reliability. The trial court also appeared- to base 'its implied finding of reliability, at least in part, on AB.’s dress and decorum and a generic consideration of harm to /‘any child.” We fail to see how AB.’s appearance and a generalized belief of harm to children, absent the “crucible of cross-examination” or other, objective individualized indicia of reliability, can transform A.B.’s untested version of events into admissible testimony on this basis. See Crawford v. Washington, 541 U.S. 36, 61, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Given the lack of findings required by section 90.803(23) or any other credible indicia of the statements’ reliability, we are unable to discern any reason why strict adherence to statutory and constitutional authority requiring cross-examination should not apply in this case.
The Mother argues that any such violations of due process that occurred in this case were harmless error because even if the Father had. .known of the,allegations and had,the opportunity to cross-examine A.B., he still would have simply denied the charges levied against him, regardless of their character. We are unpersuaded by this argument. When the trial court grants an injunction based on improperly admitted evidence, harmful error is clearly established. See Sanchez v. Marin, 138 So.3d 1165, 1169 (Fla. 3d DCA 2014). Here, the trial court explicitly stated that it made its decision based on the allegations made in the video recording, which was improperly admitted for the reasons outlined above. As such, we are forced to conclude that the error iri this case could not have been harmless.[2]
The Mother also, argues that no violation of due process could have oc *552 curred because the Father waived his rights to cross-examine A.B. and to know what accusations were made on the videotape when he failed to object to the trial court’s order that a taped interview would be taken at the Children’s Advocacy Center. But despite the Mother’s claim of waiver, the Father’s tacit agreement to the procedural'irregularity of the trial court delegating its responsibility to a forensic interviewer at the Children’s Advocacy Center is not an agreement to the admissibility of a video' of the interview with ho opportunity to view the videotape made. See Barber v. Page, 390 U.S. 719, 725, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968) (finding that waiver is “an intentional relinquishment or abandonment óf a known right or privilege”). In any event, the Father made a motion to take A.B.’s deposition that was denied, and when he was denied access to the video and thé right to be informed of its content, he objected to the video’s admissibility and moved to dismiss the injunction on these bases. These actions were more than adequate to dispel the notion of waiver. Absent waiver, the Father had the right to expect the trial court would comply with statutory law in carrying out its functions. See, e.g., § 92.53(4) (“The defendant and the defendant’s counsel must be present at the videotaping unless the defendant has waived this right.”).
In conclusion, we find that the trial court erred by receiving and relying on the videotaped interview in granting the injunction; granting the injunction even though it was not supported by competent, substantial evidence; and prohibiting the Father from viewing the video and from cross-examining A.B. without first making the requisite findings :of reliability. In so ruling, we are not ignorant of the fact that “the best interests of the minor children are paramount” in these matters. Monteiro, 55 So.3d at 690. However, this is a very different case than Townsend, in which the testimony -came -from a two-year-old,- or Hopkins, in which the testimony came--from a five-year-old. A.B. is fourteen years old, and the balancing of her interests against the rights of the accused required a. more nuanced approach than the trial court took. Further, even in light of the paramount interest in protecting minors, the trial court is still obliged to abide by statutory authority, and the injunction granted in.this case was not supported by competent, substantial evidence as required by section 784.046(4)(a)(l), and what corroborative evidence was considered was inadmissible under section 90.803(23). The Father should have been allowed to attend the videotaped interview, as required by section 92.53(4), and cross-examine A.B. absent -the -specific findings of fact required by section 90.803(23). While we have no doubt that the trial court’s efforts to protect A.B. in this case were altruistic, those efforts clearly surpassed what is allowable by the law. Accordingly, we must reverse.
Reversed and remanded with direction to vacate the' injunction and enter judgment for the Father.
■ WALLACE and KHOUZAM, JJ., Concur.

. While any one basis would have been sufficient for us to reverse, we choose to write on all three.

. We are aware of the new standard for harmless error in civil proceedings propound *552 ed by the Florida Supreme Court in Special v. West Boca Medical Center, 160 So.3d 1251, 1269, (Fla. Nov. 13, 2014), which calls for the beneficiary of the error to prove that the error did not contribute to the verdict. However, the rule advanced by that decision does not apply retroactively, and thus does not affect our analysis. See Hughes v. State, 901 So.2d 837, 840 (Fla.2005).